JOURNAL ENTRY AND OPINION
{¶ 1} This case is before this court on remand from the Ohio Supreme Court. The Ohio Supreme Court reversed our determination that defendant-appellant Samuel Brewer's challenge to the sufficiency of the evidence was moot, and remanded for us to consider that assignment of error.
 {¶ 2} In our previous decision, we concluded that appellant was prejudiced by the admission of hearsay evidence. In evaluating the sufficiency of the evidence, however, we must consider all of the evidence admitted by the trial court, whether erroneously or not. The evidence as a whole was sufficient to support the jury's verdict. Accordingly, we reverse and remand for a new trial.
 Procedural History and Evidence {¶ 3} Our previous opinion set forth in some detail the procedural history of this case; we review it again here only insofar as it is relevant to our consideration of the sufficiency of the evidence. Following a jury trial, appellant was found guilty of one count of gross sexual imposition involving a child victim, L.B. The court subsequently sentenced appellant to two years' imprisonment and found him to be a sexually oriented offender.
 {¶ 4} As relevant to the gross sexual imposition charge, at trial, the state presented the testimony of the victim's aunt, T.B.; the victim, L.B.; the victim's mother, B.G.; the victim's father, Lam.B.; Detective Sherilyn Howard; and social worker Lisa Zanella. The defense presented the testimony of pastor Shirley Miller. *Page 5 
 {¶ 5} T.B. testified that appellant lived with her and her family when they moved to Warner Road in Cleveland, Ohio, in February 2005. L.B., her niece, visited her house and played with her children. L.B.'s mother, B.G. (who is T.B.'s sister), called T.B. and told her that L.B. "was hurting and she was concerned about that. She said someone in [T.B.'s] house had hurt [L.B.]."
 {¶ 6} B.G. testified that she received a telephone call from L.B.'s father, Lam.B. on April 30, 2005. He told her that L.B. had done something to "Ro," and said something to Ro. B.G. testified that she then went to L.B., age five, and asked her if she had anything she wanted to tell B.G. about "Sam," i.e., appellant. B.G. testified that L.B. "really just shut me out," put her head down, and said very little. This was unusual behavior for L.B. L.B. told B.G. that appellant had touched her "private area." B.G. did not seek a medical examination of L.B. Through conversations with Roshawn Sample (Lam.B.'s girlfriend) and others, B.G. learned that appellant had touched her daughter's vagina and chest and kissed her.
 {¶ 7} L.B. testified that appellant kissed her "on the lips," but she denied that he used his tongue when he did so and denied that he touched her. She indicated where her "privacy" was for the jury. At first, she denied that anyone had touched her "privacy," but when asked whether "Sam" had touched her somewhere, she said yes, pointed to the place where he touched her, and agreed that that was "the *Page 6 
same place that you just showed us." She said this touching occurred while appellant was kissing her. Appellant also told L.B. not to tell anyone.
 {¶ 8} L.B.'s father, Lam.B., testified that his girlfriend, Roshawn, told him that when L.B. kissed Roshawn, L.B. "tried to stick her tongue in her mouth." Roshawn told Lam.B. that she asked L.B. where she had learned that, and L.B. told her that appellant kissed her like that. Lam.B. then called B.G. and told her "that someone named Sam had kissed [L.B.]."
 {¶ 9} Detective Howard testified that she interviewed the appellant, who denied any sexual contact with the victim. There was no evidence of any physical trauma. Social worker Lisa Zanella testified, over objection, that she interviewed L.B., and L.B. told Zanella that "Sam had touched her with his balls in her private area" and "put his balls in her mouth" once.
 Law and Analysis {¶ 10} In our previous opinion, we concluded that the trial court had abused its discretion by admitting the hearsay testimony of Lisa Zanella about what L.B. told her during her interviews. The state conceded that this testimony was improperly admitted, and we determined that the admission of Zanella's testimony was not harmless beyond a reasonable doubt.
 {¶ 11} In evaluating the sufficiency of the evidence to support appellant's conviction, however, we must consider all of the testimony that was before the trial court, whether or not it was properly admitted. State v. Yarbrough, *Page 7 95 Ohio St.3d 227, 2002-Ohio-2126,?|80; Lockhart v. Nelson (1988), 488 U.S. 33, 34. Thus, even though we have concluded that Zanella's testimony about her interviews with L.B. were improperly admitted and that her testimony was not harmless beyond a reasonable doubt, we will nevertheless consider her testimony in determining whether the evidence before the trial court was sufficient to support the conviction. If the evidence was insufficient, then the double jeopardy cause precludes retrial. However, the double jeopardy clause does not preclude retrial if thecourt erred by admitting some of the evidence, but that evidence supported the jury's actions. Lockhart, 488 U.S. at 40-42.
 {¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which is defined as "sexual contact with another, not the spouse of the offender," when "[t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." Sexual contact is statutorily *Page 8 
defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 14} Ms. Zanella's testimony that L.B. told her appellant touched L.B.'s genitals with his genitals and placed his genitals in L.B.'s mouth, if believed, provided ample evidence that appellant had sexual contact with L.B., a five-year-old child. Furthermore, L.B. testified that appellant touched her (apparently pointing to her vagina) and kissed her; there was also testimony that she told her mother that appellant had touched her "private area." Finally, there was testimony that L.B. told Lam.B.'s girlfriend that appellant had used his tongue in kissing her. This testimony, if believed, also supports a determination that appellant had sexual contact with a five-year-old child. Accordingly, we find the evidence presented to the trial court-including improperly admitted hearsay evidence — was sufficient to support appellant's conviction. Nevertheless, for the reasons stated in our previous opinion, we must reverse appellant's conviction and remand for a new trial because we cannot say that the admission of Ms.Zanella's hearsay testimony about her interviews with L.B. was harmless beyond a reasonable doubt.
Reversed and remanded.
It is ordered that appellant recover from appellee his costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 9 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR., A.J. and ANN DYKE, J. CONCUR *Page 1